## Bennis Appeal

*James C. Lanshe*, for appellant.

*J. B. Walker*, for city.

HENNINGER, P. J., August 2, 1954.—Thomas J. Bennis, Jr., and the City of Allentown have presented to this court an agreed statement of facts and of the questions involved for decision.

The facts are briefly that Bennis was appointed to the police force of the City of Allentown on July 9, 1952, and served as such until May 29, 1953, when he was incapacitated by an accident not in the line of duty. In January 1954, believing himself fully recovered, he applied for assignment to duty and the city caused him to be examined by Drs. J. Frederic Dreyer, Charles H. Zellner and Thomas Smyth, who reported that he was fit for limited duty only.

On February 2, 1954, Bennis was asked by city council to resign and on his refusal city council granted him a hearing which was held. Thereafter on April 20, 1954, council passed a resolution denying Bennis' request for reinstatement to the force, because the doctor's testimony showed he was not fit for all duties of a policeman.

On May 10, 1954, this appeal was filed in accordance with section 21 of the Act of June 5, 1941, P. L.

84, 53 PS §351.21. At a hearing held June 15, 1954, over the city's objection that the Third Class City Code of June 23, P. L. 932, applied, 53 PS §12198-4401 et seq., Dr. Joseph H. Reno testified that Bennis was fully recovered. On July 1, 1954, the city caused Bennis to be examined by Dr. Zellner, examining physician for the police civil service board, who also found him fit for all duties, but that he was only 5 feet $7\frac{9}{16}$ inches tall.

Taking the procedural objection first we note that the appeal was taken within 30 days after action by city council had excluded Bennis from a position that was protected by civil service. The facts of the petition for appeal brought him within the terms of the Third Class City Law and therefore he is entitled to relief although he inadvertently cited the law applicable to boroughs, incorporated towns and townships of the first class.

The regulations for qualifications for a salaried position in the police or fire department are in part as follows:

"Rule 11—Physical Examination

"Section 1. Every applicant for appointment to a salaried position in the Police or Fire Department shall undergo a physical examination by a licensed physician. Prior thereto said applicant shall undergo an examination for his eyes under the direction of the Medical Examiner of the board. Applicants must be at the time of examination between 21 and 35 years of age and not less than five feet eight inches (in bare feet) in height for the Police Department, on the date on which he presents himself for a Physical examination and between 21 and 35 years of age and not less than five feet four inches (in bare feet) in height for the Fire Department. Every applicant must be of the weight and measurements falling within the limits below prescribed, and must also be physically qualified

to sustain the labors and exposures of the position for which application is made."

"Section 2. The physical schedule shall be as follows:

| Height | Minimum Weight | Maximum Weight | Min. Circumference of Chest, Quiescent |
|---|---|---|---|
| 64 inches | 128 lbs. | 165 lbs. | 31½ inches |
| 65 inches | 130 lbs. | 170 lbs. | 32 inches |
| 66 inches | 132 lbs. | 172 lbs. | 32½ inches |
| 67 inches | 134 lbs. | 174 lbs. | 33 inches |
| 68 inches | 141 lbs. | 182 lbs. | 33½ inches |
| 69 inches | 148 lbs. | 190 lbs. | 33½ inches |
| 70 inches | 155 lbs. | 196 lbs. | 34 inches |
| 71 inches | 162 lbs. | 204 lbs. | 34¼ inches |
| 72 inches | 169 lbs. | 210 lbs. | 34¼ inches |
| 73 inches | 176 lbs. | 215 lbs. | 35¼ inches |
| 74 inches | 183 lbs. | 220 lbs. | 36¼ inches |
| 75 inches | 190 lbs. | 225 lbs. | 36¼ inches |
| 76 inches | 197 lbs. | 230 lbs. | 37¼ inches |

"Applicants shall have a chest expansion of not less than three inches.

"Section 3. Applicants failing to receive a rating of at least 90 in the physical examination will not be admitted to the mental examination.

"Section 4. Applicants for a position the duties of which are entirely or chiefly of a clerical nature shall undergo an examination and test as to general health, but shall not be required to conform to the above physical schedule as to heighth, weight and measurements.

It is agreed by Doctors Reno and Zellner that Bennis' accident could not have reduced his height.

City employes are entitled to 30 days' sick leave with pay per calendar year and uniform allowance of $10 per month and an annual vacation of 14 days with pay. Bennis received sick leave and vacation pay for the year 1953 and uniform allowance including June 1953.

He received no pay while incapacitated and is claiming no back pay if reinstated.

Appellant and the city have submitted these two questions for decision:

"1. Although otherwise qualified and fit to resume active duty, does the fact that Thomas J. Bennis, Jr., is only 5′ 7 9/16″ in height instead of 5′ 8″, as required of all applicants for employment as city policemen, under the rules and regulations of the civil service board, prevent him from being reinstated as an active member of the Allentown Police Department?

"2. In the event that Thomas J. Bennis, Jr., is entitled to reinstatement as an active member of the Allentown Police Department, is he entitled to any allowances for uniform, sick leave or vacation, which might have otherwise accrued up to the time he resumes active duty?"

From the nature of the first question we assume that if Bennis now measured five feet eight inches in height there would be no question of his reinstatement and we decide the point on that basis. We shall not conjure up any questions that might complicate the problem.

It would be easy to attempt to laugh off the missing 7/16 inch or in round figures half inch Bennis lacks in height, but we do not intend to do so. We recognize the advantage of establishing a minimum height for policemen and find the city's very reasonable because it is considered as merely average height for a man. While a half inch means little in the length of a whale, it might be of tremendous importance in the size of steel plates even in so tremendous an object as the steamship Queen Elizabeth. Proverbially, it makes a mountain of difference in the length of a nose.

We have no doubt that a man of 5 feet 7½ inches physically and mentally fit, might make a better policeman than many others at 5 feet 8 inches. For a civil service board to allow deviations from regulations at their discretion, however, often leads to favoritism and

to a creeping deterioration in the police and fire departments of a city. Whether or not a city council should waive such provisions is for them and not for us to decide.

We are limited to the agreed facts and they do not show how physical examination ratings are made. We cannot tell, therefore, whether the 10 percent margin permitted by section 3 permits deviation in the height of an applicant, if other points bring the total average to 90 percent. We therefore hold the provision for a height of 5 feet 8 inches to be imperative and inflexible.

We take it that Bennis' present status is that of a member of the police department on the inactive list. He has not resigned; he has not been discharged. From the request for a resignation, we would gather that the word "reinstatement" meant assignment to active duty and not reappointment to the police force. His civil service status is agreed upon.

Nor need we decide whether city council could have severed Bennis' connection with the department when, in an off duty incapacity, he had exhausted his sick leave and vacation and was unable to return to duty, or, if they could not have discharged him on that date, how long they were required to keep his place open for him. Nor is it necessary to decide whether city council could demand that an incapacitated policeman must be fit for every type of duty before he is reassigned to any duty. The fact is that council took no positive or effective action until after Bennis had fully recovered and was fit for all types of duties. Neither "denying reinstatement" nor "requesting resignation" effected a separation of Bennis from the police department.

We are not informed when Bennis regained full use of the physical faculties required of a policeman. If it occurred after April 20, 1954, we might hold the appeal premature. Since both parties have bid for our

opinion upon a narrow statement of questions involved, we refrain from allowing a possible procedural obstruction to delay our decision.

Holding then that Bennis was an inactive member of the police department at a time when he was fit for duty, we hold that the discrepancy in height was not a bar to his reassignment to active duty. Rule 11 states that "every applicant for appointment . . . must be at the time of examination . . . not less than 5 feet 8 inches (in bare feet) in heighth [sic] for the Police Department, on the date on which he presents himself for a Physical Examination. . . ."

Since Bennis undoubtedly was appointed a policeman, we must assume that he qualified for the position, for otherwise we would be impeaching the authorities who examined and appointed him. The rule is that he must meet the height requirement, "on the date when he presents himself for a physical examination" and the date of examination is not when his fitness for duty is being determined after incapacity but when he is an applicant for "appointment to a salaried position," and that occurred when he joined the police force. It is true that no one ever anticipated that a person would lose height until way beyond the period a policeman would be expected to remain on active duty, but we can interpret the regulation only as it is written.

We need not speculate on the reasons for Bennis' loss of one-half inch in height. The important fact is that it was independent of his incapacity. Nor is there any testimony that there is any actual unfitness because of the shortage in height. It then becomes an irrelevant factor on the question of reassignment of a policeman to active duty.

On the second question, we are certain of one thing and that is that an incapacitated policeman, who presumably has not worn a uniform for over a year,

should not be entitled to pay for uniform allowance.

The other phase of the problem is more difficult to determine and it is complicated by the fact that it is the employer who contends that Bennis was actually unfit for duty and the employe who maintains that he was not sick. This is complicated by another fact that we glean from the testimony of Dr. Reno before city council—incorporated into the facts in the case by paragraph 9 of the agreed statement of facts—that Bennis was working with the Posh Construction Company as early as December 17, 1953.

If Bennis was a member of Allentown's police force and was incapacitated in any way during the year 1954, he would be entitled to sick leave for the period of such incapacity up to 30 days, despite the fact that he may not have actually served as a policeman during that year.

There are two observations to be made, however. Too generous a policy in paying sick leave during a long recuperation might result in impatience on an employer's part to terminate the employment of incapacitated employes. We cannot believe that it is the spirit of civil service laws that an incapacitated person can hold his status indefinitely and meanwhile draw sick leave in each calendar year.

Furthermore, to view the matter realistically, sick leave pay is intended to compensate for inability to work. If it is paid to a person who is elsewhere employed, great abuses of sick leave rights might result. It is conceivable on the other hand that occasional earnings or slight compensation from therapy projects ought not to preclude sick leave pay in cases of obvious incapacity.

We do not have sufficient information on hand to determine whether or not Bennis is entitled to sick leave pay. If he was regularly and steadily employed at substantial pay, we would rule that he could not

claim sick leave pay during such period. If his condition rendered him unfit for any employment for 30 days in 1954, we would rule that he would be entitled to sick leave pay for such period. The city authorities can be depended upon to deal fairly with Bennis in that respect.

Since vacation pay leaves a man free to do as he pleases, either to work elsewhere—change of occupation is said to be the best recreation—or to loaf, we believe that since Bennis was a member, although inactive, of the police force during the calendar year, he is, in the absence of any regulation to the contrary, entitled to vacation pay for that year.

It goes without saying that any sick leave or vacation pay given Bennis for time off prior to reassignment to active duty will apply against all sick leave or vacation pay for the entire year 1954.

Bennis has wisely disclaimed any back pay. It was not until June 15, 1954, that city council had any notice that Bennis was fit and ready for every type of police duty and this was not confirmed by the civil service doctor until July 1, 1954. Both parties acted promptly thereafter to obtain the decision of this court whether the unanticipated deficiency in height would prevent reassignment to active duty. Both parties are to be commended for the fine spirit in which they have cooperated to solve the problems involved.

Now, August 2, 1954, the appeal of Thomas J. Bennis, Jr., from the order of Allentown City Council pursuant to resolution passed April 20, 1954, is sustained and it is ordered that Thomas J. Bennis, Jr., be reassigned to active duty on the police force of the City of Allentown within 20 days after service of this order upon the city solicitor. It is further ordered that he be paid vacation pay allowance for the year 1954 and such sick leave allowance according to the regulations

pertaining thereto as may be found due him for any periods in the calendar year 1954 when he was incapacitated by reason of his physical condition from earning substantial wages.